IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VICKI LUDWIG, LLOYD LUDWIG, KIM NANOUSKI, and JOSEPH NANOUSKI, individually and on behalf of all persons similarly situated, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) Civil Action No. |
| v. | ) |
| PILKINGTON NORTH AMERICA, INC., a Delaware corporation, | )<br>) |
| Defendant. | ) **JURY TRIAL DEMANDED** |

03C 1086

JUDGE ZAGEL

MAGISTRATE JUDGE

DOCKETED
FEB 1 4 2003

## CLASS ACTION COMPLAINT FOR
## INJUNCTIVE, DECLARATORY AND OTHER RELIEF

Plaintiffs, Vicki Ludwig, Lloyd Ludwig, Kim Nanouski, and Joseph Nanouski, individually and on behalf of all persons similarly situated, by and through their attorneys, for their Complaint against Defendant, Pilkington North America, Inc., state and allege as follows:

### COMMON ALLEGATIONS

#### Nature of the Action

1. This is a class action brought by and on behalf of all persons and non-governmental entities who own property or reside in the Village of Naplate, Illinois (the "Class"). Properties throughout the Village of Naplate are contaminated with arsenic, a highly toxic chemical and human carcinogen, as a result of the improper disposal of these chemicals by the Defendant, the owner and operator of a neighboring manufacturing facility. Defendant has destroyed the groundwater underlying virtually the entire Village. Defendant has also contaminated soils on properties in the Village. Arsenic has been detected, at lethal levels, in yards and within a residence within the Village. Defendant has known about this serious

problem for many years, yet has failed to properly investigate or clean it up. Defendant also failed to timely notify Village residents about this problem and the threats this contamination poses to their families' health and the damage this contamination has caused to their properties. By this action, Plaintiffs seek to enjoin Defendant from allowing further contamination of Plaintiffs' properties, to require Defendant to investigate and remediate the existing contamination, to require Defendant to reimburse Plaintiffs for the costs they have incurred and will incur in responding to the contamination, and to recover compensatory and punitive damages resulting from the damage to Plaintiffs' properties.

## Plaintiffs

2. Plaintiffs, Vicki and Lloyd Ludwig, are citizens of the State of Illinois and own and reside in property located at 419 22nd Avenue, Naplate, Illinois.

3. Plaintiffs, Kim and Joseph Nanouski, are citizens of the State of Illinois and own and reside in property located at 409 22nd Avenue, Naplate, Illinois.

## Defendant

4. Defendant, Pilkington North America, Inc. ("Pilkington"), is a Delaware corporation with its principal place of business in Toledo, Ohio. Pilkington owns and operates a manufacturing facility located at Center and 20th Street in Ottawa, Illinois (the "Pilkington Facility"). The Pilkington Facility is located immediately adjacent to the Village of Naplate, Illinois.

## Jurisdiction and Venue

5. This Court has jurisdiction over this matter on two separate bases. First, pursuant to 28 U.S.C. §§ 1332, this Court has diversity jurisdiction over this action, as Plaintiffs are all

citizens of Illinois, Pilkington is a citizen of states other than Illinois (Delaware and Ohio), and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs. Second, this Court also has federal question and supplemental jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367, because the claim asserted in Count I is predicated upon and seeks relief under CERCLA, 42 U.S.C. § 9607.

6. Pursuant to 42 U.S.C. § 9613(b) and 28 U.S.C. § 1391(b), venue is proper in this Court because this case arises out of actions which occurred within, and pertains to property located in, this judicial district. Both the Village of Naplate and the Pilkington Facility are located in LaSalle County, Illinois, which is within this judicial district.

### The Pilkington Facility

7. The Pilkington Facility is located adjacent to the Village of Naplate, and includes property along the north and south sides of the Illinois River.

8. That portion of the Pilkington Facility property which is located on the north side of the Illinois River (adjacent to Naplate) consists of approximately 228 acres and contains two manufacturing plants, three former wastewater settling areas and a former quarry.

9. That portion of the Pilkington Facility property which is located on the south side of the Illinois River consists of approximately 122 acres and contains four former sand quarries.

### Pilkington's Use and Disposal of Arsenic

10. The Pilkington Facility has been used primarily for glass manufacturing since 1908. Pilkington has owned and operated the Pilkington Facility since 1931. For

over sixty years, arsenic and other hazardous and highly toxic substances were used as ingredients of the glass manufacturing process at the Pilkington Facility.

11. Arsenic, a hazardous substance, is an extremely poisonous semimetallic element. Ingestion of just 0.1 grams of arsenic is lethal in humans. Arsenic has been linked to a variety of human illnesses, including lung cancer, skin cancer, bladder cancer, liver cancer, kidney cancer, and prostate cancer.

12. Throughout the time period that arsenic was used in the manufacturing process at the Pilkington Facility, liquid and solid wastes containing arsenic were generated at the Pilkington Facility.

13. Pilkington disposed of liquid and solid wastes containing arsenic in the wastewater settling areas and former quarry on that portion of the Pilkington Facility property located on the north side of the Illinois River. Pilkington also disposed of liquid and solid wastes containing arsenic in one or more of the quarries on that portion of the Pilkington Facility property located on the south side of the Illinois River.

14. Upon information and belief, Pilkington also disposed of arsenic containing wastes in off-site areas adjacent to the Pilkington Facility, including directly on properties within the Village of Naplate.

### Pilkington's Contamination of Naplate, Illinois

15. As a result of Pilkington's use and disposal of arsenic, groundwater at, in, on and beneath Plaintiffs' properties, and the properties of class members, has been contaminated.

16. As a result of Pilkington's use and disposal of arsenic, soils at, in, on and beneath Plaintiffs' properties, and the properties of class members, have been

contaminated. In sampling recently conducted inside and in the yard of a residence in the Village, arsenic was found to be present at lethal levels. At least one family has been evacuated from their home and moved to housing outside of Naplate.

17. Pilkington has known for more than 15 years of the presence of arsenic contamination associated with the Pilkington Facility, yet has intentionally and knowingly failed to notify Plaintiffs and class members about this contamination.

18. Despite Pilkington's longstanding knowledge of the arsenic contamination it has caused, Pilkington has knowingly and intentionally failed to perform timely and adequate investigation and remediation of such arsenic contamination.

19. The releases and disposals of arsenic at and from the Pilkington Facility and the subsequent migration of such contamination to the properties of Plaintiffs and the Class, were a result of Pilkington's acts or omissions during its ownership and operations, and occurred on a regular and frequent basis. On information and belief, Pilkington's negligent acts and omissions causing the contamination include, but are not limited to, improper handling, storage, use, disposal, investigation and cleanup of this hazardous substance and improper maintenance and operation of processes and equipment using arsenic and other hazardous substances.

20. On information and belief, the releases and disposals of arsenic at and from the Pilkington Facility, and the subsequent migration of such substances which occurred in material part after Pilkington became aware of the contamination, were a result of Pilkington's willful and wanton conduct during at least a part of its ownership and operation. On information and belief, Pilkington's willful and wanton conduct includes, but is not limited to, failing to properly investigate and remediate the

contamination, and failing to timely notify Plaintiffs and the Class of the contamination emanating from the Pilkington Facility, notwithstanding that Pilkington knew or should have known of the risks and dangers such contamination posed to Plaintiffs and the Class.

## The Harm to Plaintiffs Resulting from the Contamination

21. The contamination resulting from the releases has not been fully defined by Pilkington, but continues to damage and threaten the properties of Plaintiffs and the Class. The presence of extremely high levels of groundwater contamination throughout the Village threatens to impact and cross-contaminate the Village's public drinking water supply. Notwithstanding Pilkington's knowledge of these releases, and the threats posed, Pilkington not only failed to timely apprise those affected concerning the releases, but also has refused to fully address the releases so as to mitigate the threats posed.

22. As a result of the multiple and ongoing releases and Pilkington's disregard for the threats posed to Plaintiffs and the Class, the Plaintiffs and the Class have been and continue to be injured.

23. As a result of the contamination, the value of the properties of Plaintiffs and the Class have been substantially decreased, if not destroyed. In their polluted state, the properties of Plaintiffs and the Class, at a minimum, are less marketable than they would be without the contamination.

24. As a result of the presence of contamination on their properties, Plaintiffs and the Class have suffered inconvenience, annoyance and discomfort, and have been deprived of the full use and enjoyment of their properties.

25. Plaintiffs and the Class have suffered and will continue to suffer irreparable injury as a result of Pilkington's negligent and reckless acts and failure to remediate the contamination resulting from such acts and omissions.

26. Plaintiffs' and the Class' remedies at law are inadequate. Comprehensive investigation and remediation of the contamination at issue is required. The cost of such investigation and remediation will be substantial, but cannot be determined with certainty until the problem is fully investigated. If the contamination is not cleaned up, it will continue to spread, further threatening the health of Plaintiffs and the Class, further impacting and damaging the properties of Plaintiffs and the Class, and preventing full use and enjoyment by the Plaintiffs and the Class of their properties.

27. A balancing of the equities favors Plaintiffs and the Class over Pilkington, and Plaintiffs and the Class are reasonably likely to prevail at trial. Plaintiffs and the Class lack the resources to undertake the required investigation and cleanup. Pilkington has the resources to perform the investigation and cleanup.

## Class Allegations

28. Plaintiffs bring each of the claims in this action in their own names and on behalf of a class of all persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

29. The Class consists of all persons and non-governmental entities who own property or reside in the Village of Naplate, Illinois.

30. The Class is so numerous that joinder of all members is impractical.

31. There are questions of law and fact which are common to the Class, including, but not limited to: whether the chemicals disposed of by Pilkington have migrated onto the Class

Members' properties; what extent of investigation and remediation is required; whether Pilkington knew of the risks that its contamination posed to Naplate residents and property owners, yet intentionally concealed same from the Class; whether Pilkington is liable under CERCLA; whether Pilkington has committed a trespass as to Class Members' properties; and whether Pilkington's actions constitute a nuisance.

32. Plaintiffs' claims are typical of the claims of the Class. All are based upon the same factual and legal theories. Pilkington has engaged in a common course of conduct, which has resulted in contamination of the properties of the Class.

33. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel who are competent and experienced in class litigation, including environmental class actions concerning property damages, and in environmental law.

34. Certification of a class under Federal Rule 23(b)(3) is here warranted, given that the questions of fact and law identified above predominate over any individual issues, and class treatment is a superior method of adjudicating the matters at issue.

## COUNT I

## CERCLA COST RECOVERY, 42 U.S.C. § 9607(a)

35. Plaintiffs, individually and on behalf of the Class defined herein, repeat, reallege and incorporate by reference paragraphs 1 through 34 of the Common Allegations as paragraph 35 of this Count I, as though fully set forth herein.

36. Pilkington is a "person" as defined by Section 101(21) of CERCLA, 42 U.S.C. §9601(21).

37. Pilkington is an "owner" and/or "operator" of a "facility" within the meaning of Sections 101(20), 101(9) and 107(a)(1) and (2) of CERCLA, 42 U.S.C. §§9601(20), 9601(9),

9607(a)(1) and (2). Pilkington also "arranged for disposal" of hazardous substances onto properties in the Village of Naplate and "accepted hazardous substances for transport" to the Village of Naplate within the meaning of Sections 101(29), 101(26), 101(14) and 107(a)(3) and (4) of CERCLA, 42 U.S.C. §§9601(29), 9601(26), 9601(14) and 9607(a)(3) and (4).

38. The substances, including arsenic, used or stored at the Pilkington Facility are "hazardous substances," within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

39. There have been "releases" of hazardous substances into the environment, within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22). The hazardous substances released include, but are not limited to, arsenic.

40. Pilkington's releases have migrated onto the properties of Plaintiffs and the Class and have contaminated these properties.

41. Pilkington, thus, is strictly liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

42. As a result of the releases of hazardous substances, Plaintiffs and the Class have incurred, and will continue to incur, "response" costs within the meaning of Section 101(23)-(25) of CERCLA, 42 U.S.C. §§ 9601(23)-(25). All such costs are necessary costs of response consistent with the National Contingency Plan. Accordingly, Plaintiffs and the Class are entitled to full reimbursement from Pilkington for all such costs, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

## COUNT II

## NEGLIGENCE

43. Plaintiffs, individually and on behalf of the Class defined herein, repeat, reallege and incorporate by reference paragraphs 1 through 34 of the Common Allegations as paragraph 43 of this Count II, as though fully set forth herein.

44. Pilkington had a duty to Plaintiffs and the Class not to permit or allow hazardous substances to impact or invade adjacent properties. Pilkington also had a duty to promptly respond to any releases of contaminants in a manner which would prevent further migration of the contaminants, and to notify and warn Plaintiffs and the Class of and about the contamination.

45. Pilkington has breached these duties by its negligent acts and omissions in operating and maintaining the Pilkington Facility, by its failure to promptly and effectively address such contamination to prevent further migration of the contaminants, and by its failure to notify and warn Plaintiffs and the Class of and about the contamination, notwithstanding that Pilkington knew or should have known of the risks and dangers such contamination posed to Plaintiffs and the Class.

46. Pilkington's breach of its duties to Plaintiffs and the Class have caused substantial injury and damage to Plaintiffs and the Class, as set forth above.

## COUNT III

## PRIVATE NUISANCE

47. Plaintiffs, individually and on behalf of the Class defined herein, repeat, reallege and incorporate by reference paragraphs 1 through 34 of the Common Allegations as paragraph 47 of this Count III, as though fully set forth herein.

48. On information and belief, the contamination of the soils and groundwater at, in, on or beneath the Pilkington Facility and properties adjacent to and in the area of said properties occurred and persists because Pilkington negligently maintained and operated the Pilkington Facility, and because Pilkington acted negligently and recklessly in failing to address the contamination.

49. Pilkington's contamination of the soils and groundwater and its failure to address such contamination constitutes an unreasonable, unwarranted and unlawful use of the Pilkington Facility, has substantially interfered with Plaintiffs' and the Class members' reasonable use, development and enjoyment of their properties, and has invaded Plaintiffs' and the Class Members' right of private occupancy of their properties.

50. As alleged above, Plaintiffs and the Class have incurred substantial damage as a result of Pilkington's creation and maintenance of such contamination constituting a private nuisance.

## COUNT IV

## TRESPASS

51. Plaintiffs, individually and on behalf of the Class as defined herein, repeat, reallege and incorporate by reference paragraphs 1 through 34 of the Common Allegations as paragraph 51 of this Count IV, as though fully set forth herein.

52. Pilkington had a duty not to permit or allow hazardous substances used or stored at the Pilkington Facility to invade adjacent properties. Pilkington also had a duty not to allow the continuance of this wrongful trespass. Pilkington has breached these duties by its wrongful acts and omissions resulting in the contamination, by its failure to take action to prevent further

migration of the contamination, and by its failure to notify and warn Plaintiffs and the Class of and about the contamination.

53. Pilkington's wrongful acts and omissions have resulted in releases of contaminants from the Pilkington Facility into the environment and the migration of such contaminants at, in, on or beneath other properties in the area, without consent of the Plaintiffs or Class members.

54. The contamination released by Pilkington constitutes a wrongful trespass upon the land owned by Plaintiffs and Class members.

55. As a result of Pilkington's wrongful entry and trespass, the lawful rights of Plaintiffs and the Class to private occupancy of their property and to use and enjoy their property have been substantially interfered with, and Plaintiffs and the Class have been damaged.

## COUNT IV

## WILFULL AND WANTON MISCONDUCT

56. Plaintiffs, individually and on behalf of the Class as defined herein, repeat, reallege and incorporate by reference paragraphs 1 through 34 of the Common Allegations as Paragraph 56 of this Count IV, as though fully set forth herein.

57. Pilkington has acted in a wanton and willful manner and in reckless indifference to the safety of Plaintiffs' and the Class members' health and property, and to the safety of the general public, including in the following ways:

>  (a) Pilkington allowed hazardous substances to routinely and frequently spill, and otherwise be released, into the ground without appropriate safeguards to prevent or remedy such releases;
>
>  (b) Pilkington stored their arsenic containing wastes in earthen pits and/or other devices which were not equipped with sufficient safeguards to prevent the release, discharge, spillage, leeching or escape of said substances;

(c) Pilkington has failed, for well over a decade, to determine the impact of the contamination on its property to the properties of Plaintiffs and members of the Class, when Pilkington knew or should have known of the likelihood that these properties were likely contaminated;

(d) Notwithstanding knowledge of the highly contaminated character of its property, and of the risks posed to Plaintiffs and Class members thereby, Pilkington has failed and refused to undertake adequate investigation or remediation efforts;

(e) Notwithstanding knowledge that the contamination it caused had contaminated the properties of Plaintiffs and the Class, Pilkington failed and refused to timely notify and warn Plaintiffs and the Class of and about the contamination and the risks posed to Plaintiffs and the Class thereby.

58. As a direct and proximate result of the willful, wanton and reckless acts and/or omissions of Pilkington, Plaintiffs and the Class have sustained damages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and in favor of the Class and against Defendant, and pray:

A. that the Court certify Plaintiffs' action as a Class action on behalf of all others similarly situated, appoint Plaintiffs' counsel as counsel for the Class, and order that Notice be given to the Class of this action;

B. that the Court declare that Defendant is liable under Section 107(a) of CERCLA for the response costs incurred by Plaintiffs and the Class in connection with the release of hazardous substances, including pre-judgment interest on such costs and order that Defendant reimburse Plaintiffs for such response costs;

C. that the Court award Plaintiffs and the Class judgment for all response costs, including pre-judgment interest, incurred by Plaintiffs and the Class as of the trial of this matter; and, such other and further relief as the Court deems proper;

D. that the Court preliminarily and permanently restrain and enjoin Defendant from continuing to permit the continued presence of contamination at, in, on, beneath, or adjacent to its property which may present a danger to health or the environment, require that Defendant immediately investigate and remedy such contamination, and require Defendant to take appropriate measures to ensure that the Village's drinking water supply is not impacted by the existing arsenic contamination;

E. that the Court award Plaintiffs and the Class compensatory, punitive and other appropriate damages in an amount to be determined by the evidence at trial;

F. that the Court preliminarily and permanently enjoin Defendant from further spillage, release, seepage or migration of hazardous substances on and from its property;

G. that the Court order expedited discovery to determine the nature, extent and full scope of the contamination;

H. that the Court disgorge Defendant of the profits and benefits Defendant has enjoyed from its failure to determine the full extent of contamination on all property that it does not own and restoring any such contaminated property to its pre-contaminated condition;

I. that the Court award Plaintiffs and the Class punitive damages in an amount sufficient to deter Defendant and other companies and/or individuals who are similarly situated from acting in a similar manner;

J. that the Court award attorney's fees to Plaintiffs and the Class, and;

K. that the Court award Plaintiffs and the Class their costs of suit and such other and further relief as the Court deems just and proper.

### Jury Trial Demanded

Plaintiffs request trial by jury on all issues so triable.

Dated: February 13, 2003

Respectfully submitted,

**VICKI LUDWIG, LLOYD LUDWIG, KIM NANOUSKI, and JOSEPH NANOUSKI**, individually and on behalf of all persons similarly situated,

By: _____
One of Their Attorneys

Norman B. Berger
Michael D. Hayes
Anne E. Viner
VARGA BERGER LEDSKY HAYES & CASEY
A Professional Corporation
224 South Michigan Avenue, Suite 350
Chicago, Illinois 60604
(312) 341-9400


Shawn M. Collins
Edward J. Manzke
THE COLLINS LAW FIRM, P.C.
1770 N. Park Street, Suite 200
Naperville, Illinois 60563
(630) 527-1595


Shell J. Bleiweiss
LAW OFFICES OF SHELL J. BLEIWEISS
321 South Plymouth Court
Suite 1200
Chicago, Illinois 60604
(312) 360-8782

Civil Cover Sheet

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

## Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use <u>only</u> in the Northern District of Illinois.

**Plaintiff(s):** VICKY LUDWIG, LLOYD LUDWIG, KIM NANOUSKI, and JOSEPH NANOUSKI, individually and on behalf of all persons similarly situated.

**Defendant(s):** PILKINGTON NORTH AMERICA, INC.

County of Residence: LaSalle County, Illinois

County of Residence:

Plaintiff's Atty: Norman B. Berger
Varga Berger Ledsky Hayes & Casey
224 S. Michigan #350 Chicago, IL 60604
312/341-9400

Defendant's Atty:

II. Basis of Jurisdiction: **3. Federal Question (U.S. not a party)**

III. Citizenship of Principal Parties **(Diversity Cases Only)**
  Plaintiff:- **N/A**
  Defendant:- **N/A**

IV. Origin: **1. Original Proceeding**

V. Nature of Suit: **893 Environmental Matters**

VI. Cause of Action: **This action is brought pursuant to CERCLA, 42 U.S.C. Sec. 9607 and Illinois common law concerning environmental contamination caused by Defendant. Diversity jurisdiction is also present.**

VII. Requested in Complaint
  Class Action: **Yes**
  Dollar Demand: **$75,000 +**
  Jury Demand: **Yes**

VIII. This case **IS NOT** a refiling of a previously dismissed case.

http://www.ilnd.uscourts.gov/PUBLIC/Forms/auto_js44.cfm

2/12/0

**Signature:** /s/ [signature]

**Date:** 2-13-03

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the*Back* button in your browser and change it. Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size in your browser display to make the form print properly.**
Revised: 06/28/00

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
## Eastern Division

**JUDGE ZAGEL**

**MAGISTRATE JUDGE BOBRICK**

In the Matter of

VICKI LUDWIG, LLOYD LUDWIG, KIM NANOUSKI, and JOSEPH NANOUSKI, individually and on behalf of all persons similarly situated,

vs.

PILKINGTON NORTH AMERICA, INC., a Delaware corporation

Case Number: 03C 1086

**DOCKETED FEB 1 4 2003**

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Plaintiffs, Vicki Ludwig, Lloyd Ludwig, Kim Nanouski and Joseph Nanouski, individually and on behalf of all persons similarly situated

| (A) | (B) |
|---|---|
| SIGNATURE: /s/ Norman B. Berger | SIGNATURE: /s/ Michael D. Hayes |
| NAME: Norman B. Berger | NAME: Michael D. Hayes |
| FIRM: Varga Berger Ledsky Hayes & Casey | FIRM: Varga Berger Ledsky Hayes & Casey |
| STREET ADDRESS: 224 South Michigan Avenue, Suite 350 | STREET ADDRESS: 224 South Michigan Avenue, Suite 350 |
| CITY/STATE/ZIP: Chicago, IL 60604 | CITY/STATE/ZIP: Chicago, IL 60604 |
| TELEPHONE NUMBER: (312) 341-9400 | TELEPHONE NUMBER: (312) 341-9400 |
| IDENTIFICATION NUMBER: 6180053 | IDENTIFICATION NUMBER: 6187607 |
| MEMBER OF TRIAL BAR? YES ✓ NO ☐ | MEMBER OF TRIAL BAR? YES ✓ NO ☐ |
| TRIAL ATTORNEY? YES ✓ NO ☐ | TRIAL ATTORNEY? YES ✓ NO ☐ |
|  | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ✓ |

| (C) | (D) |
|---|---|
| SIGNATURE: /s/ Anne E. Viner | SIGNATURE: |
| NAME: Anne E. Viner | NAME: |
| FIRM: Varga Berger Ledsky Hayes & Casey | FIRM: |
| STREET ADDRESS: 224 South Michigan Avenue, Suite 350 | STREET ADDRESS: |
| CITY/STATE/ZIP: Chicago, IL 60604 | CITY/STATE/ZIP: |
| TELEPHONE NUMBER: (312) 341-9400 | TELEPHONE NUMBER: |
| IDENTIFICATION NUMBER: 6216446 | IDENTIFICATION NUMBER: |
| MEMBER OF TRIAL BAR? YES ☐ NO ✓ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ✓ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ✓ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |