# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1086 | **DATE** | 6/9/2003 |
| **CASE TITLE** | PILKINGTON NORTH AMERICA, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5)
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Defendant's motion (7-1) for partial dismissal is granted.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JUN 10 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 17 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | DW | 03 JUN 10 AM 8:19 | date mailed notice | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
JUN 10 2003

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VICKI LUDWIG, LLOYD LUDWIG, KIM
NANOUSKI and JOSEPH NANOUSKI,
individually and on behalf of all persons
similarly situated,

    Plaintiffs,

v.

PILKINGTON NORTH AMERICA, INC.,

    Defendant.

No. 03 C 1086
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Defendant, Pilkington North America, Inc. ("PNA") has owned and operated a glass manufacturing facility on the Illinois River in Ottawa, Illinois since 1931.[1] This facility is located adjacent to the Village of Naplate. Arsenic was a raw material used in the process of manufacturing glass at this facility. By-products of the manufacturing containing arsenic were negligently, recklessly and/or intentionally disposed in various locations on the property of the manufacturing facility. As a result, the soils and groundwater in Naplate have been contaminated. For more than 15 years, PNA has known of this arsenic contamination but has failed to investigate, remediate, or notify the plaintiffs about it.

Plaintiffs claim that they have incurred and will continue to incur costs in responding to the contamination. They have filed suit on behalf of themselves and a putative class of residents and businesses in Naplate to recover these costs along with damages for the diminution in value

---

[1] The facts as set forth in this opinion are deemed true for the purpose of this motion only.

of their properties, a disgorgement of PNA's profits, and punitive damages. In addition, plaintiffs request equitable relief, particularly to:

> preliminarily and permanently restrain and enjoin Defendant from continuing to permit the continued presence of contamination at, in, on, beneath, or adjacent to its property which may present a danger to health or the environment, require that Defendant immediately investigate and remedy such contamination, and require Defendant to take appropriate measures to ensure that the Village's drinking water supply is not impacted by the existing arsenic contamination [and] preliminarily and permanently enjoin Defendant from further spillage, release, seepage or migration of hazardous substances on and from its property.

PNA moves for partial dismissal of plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on the ground that this Court lacks jurisdiction to award this injunctive relief sought by the plaintiffs. The basis for this lack of jurisdiction is §113(h) of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, *et seq.*, which strips jurisdiction when the remedy sought impacts a remedial action under CERCLA. According to PNA, it is in the process of engaging in a remedial action under CERCLA pursuant to an Administrative Order on Consent ("AOC") related to the Ottawa Township Flat Glass Site ("Site") into which it entered with the United States Environmental Protection Agency ("EPA") in September 2001. Even before this agreement, PNA had been working in conjunction with both the EPA and the Illinois Environmental Protection Agency ("IEPA") and had already spent millions of dollars to address the very issues plaintiffs raise in their complaint. Since as early as 1984, PNA, EPA, and IEPA have been working together to study the Site and the surrounding areas, including the plaintiffs' property. The EPA and IEPA conducted a CERCLA preliminary assessment in 1984, a CERCLA Site Assessment in 1989, and a Site Prioritization Report in 1995. Moreover, PNA completed various studies on its own

between 1984 and 2001, including sampling of on-site and off-site groundwater, residential wells, public wells, leachate and surface and sub-surface soils and sediments. Thus, the environmental condition in this action has been, and continues to be, the subject of extensive evaluation and planning by PNA and two governmental agencies for approximately 19 years. As a result of this remedial action, PNA claims this Court has no jurisdiction over plaintiffs' claim for injunctive relief.

CERCLA was enacted to ensure the efficient and expeditious clean up on contaminated sites. *Oil, Chem. & Atomic Workers Int'l Union (OCAW), AFL-CIO v. Pena*, 62 F.Supp.2d 1, 3-4 (D.D.C. 1999), *aff'd*, 214 F.3d 1379 (D.C. Cir. 2000); *United States v. Kramer*, 770 F.Supp. 954, 958 (D.N.J. 1991). Under CERCLA, the government can either clean up the contaminated site itself or order a party responsible for the pollution to clean up the site. In 1986, Congress amended CERCLA by enacting the Superfund Amendment and Reauthorization Act ("SARA"). SARA added a new provision to CERCLA, §113(h) (also referred to as the "pre-enforcement review" or "timing of review" provision), which was designed to expedite the cleanup of contaminated sites by curtailing litigation that challenged cleanup activities under §104 or order under §106. This provision, which strips federal courts of jurisdiction to review any challenge to a removal or remediation plan selected under §104 or ordered under §106 of CERCLA, states in relevant part:

> No Federal court shall have jurisdiction under Federal law other than under section 1332 of title 28 of the United States Code (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:

3

> (1) An action under section 9607 of this title to recover response costs or damages or for contribution.
>
> (2) An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.
>
> (3) An action for reimbursement under section 9606(b)(2) of this title.
>
> (4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.
>
> (5) An action under section 9606 of this title in which the United States has moved to compel a remedial action.

42 U.S.C. § 9613(h). According to PNA, this section precludes jurisdiction here, but according to plaintiffs, §113(h) is inapplicable because it does not apply to state law diversity claims, which are the only claims in this case pursuant to which injunctive relief is sought.

The most expansive analysis of whether state law claims are subject to dismissal under §113(h) was performed recently in *Samples v. Conoco, Inc.*, 165 F.Supp.2d 1303 (N.D. Fla. 2001). In *Samples*, the court held that "subsection (h) does not affect the rights of persons to bring nuisance, trespass, or similar actions under state law for remedies within the control of state courts *which do not conflict with CERCLA.*" Id. at 1315 (emphasis added). The court continued that:

> [a]n obvious example of a nuisance action that conflicts with CERCLA would be one that states a claim or controversy arising under the Act. *Another example would be one that in essence constitutes a challenge to a removal or remedial action as that term is used in section 113(h)*.

*Id.* at 1315, n. 9 (emphasis added). While providing the most detailed analysis and review of the issue, *Samples* is not the only case which has addressed whether state law claims that impact a remediation plan are subject to dismissal under §113(h). In *Beck v. Atlantic Richfield Co.*, 62 F.3d 1240, 1243 (9th Cir. 1995), the Court of Appeals for the Ninth Circuit held that a district court did not have jurisdiction over a plaintiffs' state law claim for injunctive relief "because that claim constitutes a 'challenge' to the CERCLA cleanup effort over which the district court would not have jurisdiction until the cleanup was completed." Thus, while §113(h) does not automatically preclude state law causes of action, it does divest the court of jurisdiction when the remedy sought impacts the remedial action under CERCLA, even where that remedy is based upon a state law cause of action.

The equitable relief sought by plaintiffs here is precisely the type of state law action which *Samples* and *Beck* instructs is subject to CERCLA's timing of review provision – a challenge to the removal or remedial action plan put in place by the EPA. Accordingly, the relief requested conflicts with CERCLA and §113(h) strips this Court of jurisdiction to award plaintiffs' injunctive relief. These rulings are consistent with PNA's motion which seeks only the dismissal of the equitable relief portions of the plaintiffs' complaint. PNA does not seek to dismiss plaintiffs' state law claims to the extent they seek only money damages and do not impact the remediation plan.

In support of their position that §113(h) does not preclude this court's jurisdiction over their state law claims for injunctive relief, plaintiffs cite a single unreported case, *Stepp v. Monsanto Research Corp.*, No. C-3-91-468, 1993 WL 1367349, at *3 (S.D. Ohio Sept. 30, 1993). Although *Stepp* held that §113(h) "is specifically limited to instances where the 'review'

5

of the EPA's order is based upon federal law" and that it "does not preclude suits based upon state law," I respectfully suggest that the foundation for this holding is questionable. Id. at *3. *Stepp* cites legislative history of § 9613(h) indicating that "[n]ew section [9613(h)] is not intended to affect in any way the rights of persons to bring nuisance actions under State law with respect to releases or threatened releases of hazardous substances, pollutants, or contaminants." H.R.Conf.Rep. 99-962 as 224, reprinted in, 1986 USCC & AN 3276, 3317. Unfortunately for plaintiffs, another section of the same legislative history notes that "[a]ctions within the scope of diversity jurisdiction may include . . . a private nuisance suit against a person in another state *who is not otherwise acting pursuant to an agreement with the Federal or State governments*," which is not the situation here. 132 Cong.Rec. 28,406, 28,441 (1986). Therefore, read together, this legislative history, at best, establishes that a person may bring a state law nuisance suit seeking injunctive relief, without being barred by §113(h), so long as the defendant has not entered into a removal or remediation plan with which the plaintiff's claim for injunctive relief may interfere. In any event, I find *Stepp*'s reliance on one piece of legislative history to support its holding to be a good example of "looking over a crowd and picking out your friends." See Patricia M. Wald, *Some Observations on the Use of Legislative History in the 1981 Supreme Court Term*, 68 Iowa L Rev 195, 214 (1983) (quoting a conversation with Judge Harold Leventhal). Moreover, the more thorough legislative history analysis offered in *Samples* establishes that while §113(h) does not automatically preclude state law causes of action, as *Stepp* correctly notes, the provision does divest the court of jurisdiction when the remedy sought impacts the remedial action under CERCLA, even where that remedy is based upon a state law cause of action. That is the situation here, and, accordingly, §113(h) precludes this Court from having jurisdiction over plaintiffs'

claim for injunctive relief relating to the Ottawa Township Flat Glass Site in light of the AOC related to the Site between PNA and the EPA.

For the reasons above, PNA's Motion for Partial Dismissal is GRANTED.

ENTER:

James B. Zagel
United States District Judge

DATE: JUN 0 9 2003