# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1086 | **DATE** | 8/10/2004 |
| **CASE TITLE** | LUDWIG, ET AL vs. PILKINGTON NORTH AMERICA | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff'S eight motion (61-1) to compel is granted in part and denied in part. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | AUG 13 2004 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | 70 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| DW courtroom deputy's initials | | 2004 AUG 12 PM 5:17 date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

VICKI LUDWIG, LLOYD LUDWIG, KIM
NANOUSKI and JOSEPH NANOUSKI,
individually and on behalf of all persons
similarly situated,

Plaintiffs,

v.

PILKINGTON NORTH AMERICA, INC.,

Defendant.

No. 03 C 1086
Judge James B. Zagel

DOCKETED
AUG 1 3 2004

## MEMORANDUM OPINION AND ORDER

In their Eighth Motion to Compel, Plaintiffs ask for the production of documents that have been categorized by the Defendant as privileged. In response to the motion, Defendant reviewed the documents at issue and decided to release a large number them, about 1,000. Defendant claims that the remaining documents fall under the various privileges described in Defendant's amended privilege log. Because the previous log contained so many wrongly classified documents, some of which Plaintiffs claim to be highly relevant, Plaintiffs are skeptical of Defendant's continuing claims of privilege and seek production of documents that continue to be withheld.

### I. Attorney Client Privilege and the Self-Critical Analysis Privilege.

Plaintiffs argue that they are entitled to the production of documents currently withheld as privileged under the attorney client privilege and the self critical analysis privilege. Plaintiffs

70

claim that the Defendant's description of the documents withheld under the attorney client privilege are insufficient to establish that the documents are in fact privileged. This is especially true in the instances where the attorney's involvement is unclear and where the documents' descriptions have changed over time. I do not think that the poor descriptions are fatal to Defendant's assertions of attorney-client privilege. Thus, Defendant need not produce documents that are legitimately protected by attorney-client privilege. Similarly, the documents that appear with new descriptions in the amended privilege log or that were omitted from the amended privileged log, also need not be produced, as I accept the Defendant's explanation that these documents were mislabeled or, in some cases, omitted by mistake.[1] I do, however, understand Plaintiffs' frustration with Defendant's mistakes and order the following: Plaintiffs will be allowed to chose 30 documents from the amended privilege log for my *in camera* review. The Defendant will submit those documents to my chambers along with a brief letter describing why the attorney-client privilege should apply. I do this to assuage Plaintiffs' understandable fears that additional documents are being wrongly withheld.

Plaintiffs also seeks the production of documents withheld under the self-critical analysis privilege. The self-critical analysis privilege is intended to encourage companies to engage in candid and often times critical internal investigations of their own possible wrong doings.[2] Despite the benefits of encouraging such investigations, courts have been somewhat hesitant to embrace the self-critical analysis privilege and have often qualified their uses of the privilege

---

[1] Since I accept Defendant's explanation for withholding and/or mislabeling documents, I will not grant Plaintiffs' requests for sanctions or for additional depositions.

[2] No doubt, this privilege grows out of the same line of thinking as the Federal Rules of Evidence's ban on information tending to show the remedial measures taken by defendants.

with phrases like "assuming that the self-critical analysis privilege exists" or have noted that other courts have questioned the existence of such a privilege altogether. *See Morgan v. Union Pac. R.R.*, 182 F.R.D. 261, 264 (N.D. Ill. 1998); *In re Mercury Fin. Co.*, 1999 U.S. Dist. LEXIS 11236 at *11-12 (N.D. Ill., July 12, 1999); *Hardy v. New York News, Inc.*, 114 F.R.D. 633, 640-41 (S.D.N.Y. 1987). The general hesitation of the courts to fully embrace this privilege is quite understandable since its application will lead to the exclusion of extremely relevant and persuasive evidence. In theory, this exclusion is justified by the advancement to the public's interest in having companies investigate and ultimately cure problems with their products or processes. While the courts' general hesitance has caused some frustration for supporters of this privilege, *See* Robert J. Bush, *Comment: Stimulating Corporate Self-Regulation–The Corporate Self-Evaluative Privilege: Paradigmatic Preferentialism or Pragmatic Panacea*, 87 Nw U.L. Rev. 597, 607-612 (1993), it is, in my opinion, necessary to ensure that it is the public's interest, and not the asserting party's interest, that is served when relevant evidence is withheld pursuant to this privilege.

The majority of courts that ultimately concede or assume the privilege exist have narrowed the privilege's scope so that it does not apply to the documents at issue in the individual cases. *Dowling v. Am. Haw. Cruises*, 971 F.2d 423 (9th Cir., 1992); *DeNova v. United States DOL, Office of Mine Safety & Health*, 214 F.3d 586 (5th Cir., 2000); *Federal Trade Comm'n v. TRW, Inc.*, 628 F.2d 207 (D.C. Cir. 1980) (citations omitted); *Morgan v. Union Pac. R.R.*, 182 F.R.D. 261, 264 (N.D. Ill. 1998). For example, courts have limited the protected materials to those that contain subjective rather than objective findings, were created at the behest of the government, or had not been previously disclosed to a government agency. *See*

*Morgan v. Union Pac. R.R.*, 182 F.R.D. 261, 264 (N.D. Ill. 1998); *Resnick v. ADA*, 95 F.R.D. 372, (N.D. Ill. 1982); *Roberts v. Carrier Corp.*, 107 F.D.R. 678 (N.D. Ind. 1985); *In re Subpoenas Duces Tecum*, 738 F.2d 1367 (D.C. Cir. 1984); *See also* Robert J. Bush, *Comment: Stimulating Corporate Self-Regulation–The Corporate Self-Evaluative Privilege: Paradigmatic Preferentialism or Pragmatic Panacea*, 87 Nw U.L. Rev. 597, 607-612 (1993)

Recently, the courts in this district, that have assumed the existence of the self-critical analysis privilege have required the party seeking to assert the privilege to show that (1) the information sought resulted from a self-critical analysis undertaken by the party seeking protection, (2) the public has a strong interest in preserving the free flow of the information sought, (3) the information is of the type whose flow would be curtailed if discovery were allowed, and (4) the document was prepared with the expectation that it would be kept confidential and has in fact been kept confidential. *Morgan v. Union Pac. R.R.*, 182 F.R.D. 261, 264 (N.D. Ill. 1998) (citing *Dowling v. Am. Haw. Cruises*, 971 F.2d 423, 426 (9th Cir. 1992); *Robbins v. Provena St. Joseph's Med. Ctr.*, 2004 US Dist. LEXIS 3878 at *4-6 (N.D. Ill. Mar. 10, 2004); *Tice v. American Airlines. Inc.*, 192 F.R.D. 270, 273 (N.D. Ill. 2000); *compare with In re Mercury Fin. Co.*, 1999 U.S. Dist. LEXIS 11236 at *11-12 (N.D. Ill., Jul. 12, 1999) (the court found that the self-critical analysis privilege was not applicable because the party asserting the privilege had not shown that the public interest was benefitted by assertion of the privilege). In my opinion, these factors are well suited to limiting protected information to that which tends to advance the public's interest. To these factors, I would also add, as many courts have already done, a provision limiting the privilege's protections to subjective information.

However, even if I assume that the self-critical analysis privilege exists, I would not apply it to the documents in this case beecause the Defendant's descriptions of the privileged documents are insufficient to trigger the privilege's attachment. The descriptions provided in the Defendant's original and amended privileged logs fall well short of establishing even a single element listed above. Had the Defendant been asserting a well accepted and defined privilege, such the attorney-client privilege, the outcome, as demonstrated by the above discussion, would have been different. With the self-critical analysis privilege, the combination of the privilege's tenuous nature and the Defendant's utter failure to show that the privilege actually applies to its documents, makes its inappropriate here. Thus, I order the documents previously withheld under claims of self-critical analysis privilege be produced.

## II. The Fleischman-Hillard Documents

Plaintiffs claim they are entitled to production of documents sent to or created by Defendant's PR firm, Fleischman-Hillard ("FH"). Defendant, however, claims that FH's involvement with the documents did not destroy their privileged status. In support of this position, Defendant cities *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213 (S.D.N.Y. 2001), a case in which the court found confidential communications between defendant, defendant's in-house counsel, defendant's outside counsel, and defendant's PR Firm, "that were made for the purpose of facilitating the rendition of legal services to [defendant] [could] be protected from disclosure by the attorney-client privilege." *Id.* at 219; *See Also Ziemack v. Centel Corp*, 1995 U.S. Dist. LEXIS 6942 (N.D. Ill. May 18, 1995). Plaintiffs do not dispute that documents primarily concerned with legal assistance, and not just business advice, would be protected by

privilege. Instead, Plaintiffs argue that Defendant has not established that the contested documents actually dealt with legal advice and point out that the defendant in *Copper Market* had submitted a sworn affidavit from the PR firm's representative attesting to the contents of the communications. *Id.* at 220-21. If Defendant is willing to produce a similar affidavit in this case, I will accept that the documents pertain to legal advice and will not order their production. Otherwise, the documents will need to be produced.

### III. Joint Defense Privilege

Plaintiffs claim that they are entitled to production of a large number of documents currently being withheld under the joint defense privilege. Specifically, Plaintiffs are seeking production of communications between Defendant and U.S. Silica and between Defendant and General Motors ("GM") that took place before the parties entered into joint defense agreements with the Defendant, in December 1993 and April 2004 respectively. Plaintiffs are also seeking production of Defendant's communication with Trinova, a company with which Defendant did not enter into a joint defense agreement.

The joint defense privilege, also identified as the common interest rule, is an extension of the attorney-client privilege which "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *United States v. Evans*, 113 F.3d 1457, 1467 (7th Cir., 1997) (citing *United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 28 (1st Cir. 1989). For the joint defense privilege to apply, the parties must have a manifested common interest in the litigation. *Id.* While a written

agreement between the parties is not required to invoke the joint defense privilege, the parties asserting the privilege must, in the very least, show an expressed intent to cooperate in the litigation. *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 2003 U.S. Dist. LEXIS 14084 at *4-6 (N.D. Ill. Aug. 11, 2003).

With respect to U.S. Silica, Defendant claims that the parties manifested their intent to cooperate by circulating a draft joint defense agreement as early as August 26, 1992 and by jointly attending a meeting with Illinois Environmental Protection Agency on June 19, 1992. However, considering an agreement to cooperate in litigation and attending one meeting together is simply not sufficient to establish an intent between the parties to cooperate in the litigation. Had the Defendant alleged some sort of informal agreement or verbal understanding, my decision might be different. But, given the scant nature of Defendant's evidence on cooperation, I find that the joint defense privilege did not exist before the parties' written agreement was signed on December 16, 1993 and order all documents predating that agreement be produced.

With respect to GM, Defendant argues that their joint defense agreement was retroactive and, thus, protects information exchanged before the parties signed the agreement in April 2004. Plaintiff, on the other hand, argues that the date of the agreement should be the controlling date, regardless of whether the parties intended the agreement to protect previously exchanged information. To support their assertion that retroactive agreements are enforceable, Defendants point to *Calgon*, a case in which Judge Nolan upheld the parties' joint defense agreement's retroactive provision. *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 2003 U.S. Dist. LEXIS 14084 at *5-7 (N.D. Ill. Aug. 11, 2003). However, Judge Nolan did not find that the retroactive portion of the parties' joint defense agreement protected all of the parties' previous

communications but, instead, found that it protected only those made after the parties entered into an informal verbal agreement to cooperate, approximately six months prior to signing the written agreement. *Id.* Said another way, Judge Nolan refused to apply the retroactive provision without additional evidence showing that the parties had manifested some sort of agreement to cooperate at the time the communications were made. This limitation, I think, is required by the joint defense privilege's underlying assumption that the parties's communications were made in furtherance of their agreed upon joint defense strategy. Since Defendant has not presented any evidence that they intended to cooperate with GM before the written joint defense agreement was made, I find that it is inapplicable to the period preceding the written agreement and order all documents predating the agreement be produced.

Finally, with respect to Trinova, Defendant argues that its communications are protected by their shared liabilities resulting from the litigation. In 1986, PNA acquired the glass making business assets of Trinova, then known as Libbey-Owens-Ford. The sale agreement required Trinova to establish a $25M indemnity fund to deal with future environmental matters, which was exhausted long before the start of this litigation. The agreement also expressly provided the Defendant would assume any additional environmental liability after the sale. At best, this sends somewhat mixed signals on whether the parties actually share liability in this case. But, even if the Defendant had demonstrated clearly shared liability, I would still not apply the joint defense privilege to the parties' communications, as the Defendant has presented no evidence that the parties manifested any kind of intent to cooperate, written, oral, or otherwise. Thus, I find that the joint defense privilege does not apply to communications between the Defendant and Trinova and order all documents previously withheld be produced.

For the reasons stated herein, Plaintiffs' Eighth Motion to Compel is GRANTED in part and DENIED in part.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: 8/10/2004